RAPSON LAW OFFICES
 DAVID J. RAPSON, SBN 111972
318 San Carlos Avenue
Piedmont, California 94611
Telephone: (510) 286-2080
Email: rapsonlaw@gmail.com

Attorneys for Community Bank
of the Bay

GUTTENBERG, RAPSON & COLVIN LLP
1111 Broadway, Suite 1500
Oakland, California 94607
Telephone: (510) 286-2060

# UNITED STATES BANKRUPTCY COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| In re:<br><br>NARIMAN SEYED TEYMOURIAN,<br><br>Debtor<br>_____<br>COMMUNITY BANK OF THE BAY,<br><br>Plaintiff,<br><br>vs.<br><br>NARIMAN SEYED TEYMOURIAN,<br><br>Defendant.<br>_____ | Case No. 23-30668-DM<br><br>Chapter 7<br><br>Adversary No. _____<br><br>**COMPLAINT BY CREDITOR FOR DETERMINATION OF DISCHARGEABILITY OF DEBT [11 USC § 523(a)(2)]**<br><br>(Hearing date to be set by Summons) |

Plaintiff Community Bank of the Bay ("CBB"), alleges:

## JURISDICTION

1.  This is a core proceeding over which this Court has jurisdiction pursuant to 28 U.S.C. § 157(b)(2)(I). The case to which these proceedings relate is *In re Nariman Seyed Teymourian* pending in this District and Division as Case No. 23-30668-DM (the "Main Case").

2.  Defendant Nariman Seyed Teymourian ("Teymourian") is the debtor in the Main Case, which is currently a Chapter 7 case. CBB is a creditor of Teymourian.

-1-

Case: 24-03015   Doc# 2   Filed: 04/19/24   Entered: 04/19/24 07:34:00   Page 1 of 26
COMM. BANK OF THE BAY'S COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT 04/17/24 (1)
CBB.TEY/11ADV.COM

GUTTENBERG, RAPSON & COLVIN LLP
1111 Broadway, Suite 1500
Oakland, California 94607
Telephone: (510) 286-2060

3.     This is an adversary proceeding to determine the dischargeability of debts.

4.     Pursuant to Bankruptcy Local Rule 7008-1, CBB consents to the entry of a final order and judgment in this case by the Bankruptcy Court.

### GENERAL ALLEGATIONS

### The $7,000,000 Barry Lane Loan

5.     On or about September 14, 2021, CBB provided to Teymourian, at Teymourian's request, a real estate secured revolving line of credit (the "Barry Lane Loan") in the principal amount of $7,000,000.

6.     On or about September 14, 2021, and in connection with the making of the Barry Lane Loan, Teymourian made, executed and delivered to CBB a promissory note (the "Barry Lane Note") of that date stating Teymourian's obligations to repay the Barry Lane Loan to CBB. A true and correct copy of the Barry Lane Note is attached hereto as Exhibit "1" and incorporated by reference.

7.     On or about December 29, 2022, CBB and Teymourian agreed to modify the terms of the Barry Lane Note by (among other things) changing its maturity date from September 14, 2024 to September 14, 2023 and by changing the interest rate from a variable rate to a fixed rate. In connection with those modifications on or about that date, Teymourian executed and delivered to CBB a written Change In Terms Agreement (the "Barry Lane CITA"). A true and correct copy of the Barry Lane CITA is attached hereto as Exhibit "2" and incorporated by reference.

8.     Prior to CBB making the Barry Lane Loan to Teymourian, and as part of its loan underwriting and evaluation of Teymourian's creditworthiness, CBB requested that Teymourian provide it with copies of his most recent tax returns filed with the Internal Revenue Service. As part of its underwriting process, CBB also requested that Teymourian represent and warrant that he had paid all income taxes owed by him.

9.     In response to those requests, Teymourian provided to CBB copies of what Teymourian represented to CBB were accountant-prepared (a) Form 1040 U.S.

Case: 24-03015   Doc# 2   Filed: 04/19/24   Entered: 04/19/24 07:34:00   Page 2 of 26   CBB.TEY/11ADV.COM
COMM. BANK OF THE BAY'S COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT 04/17/24 (1)

GUTTENBERG, RAPSON & COLVIN LLP
1111 Broadway, Suite 1500
Oakland, California 94607
Telephone: (510) 286-2060

1  Individual Tax Returns filed by or on behalf of Teymourian and his spouse for tax years

2  2016, 2017, 2018, and 2019 (the "Tax Returns"), (b) an Application for Automatic

3  Extension of Time to File U.S. Individual Tax Return for the 2019 Tax Year (the "2019

4  Extension Request"), and (c) an Application for Automatic Extension of Time to File U.S.

5  Individual Tax Return for the 2020 Tax Year (the "2020 Extension Request").

6         10.    Prior to CBB making the Barry Lane Loan to him, Teymourian also

7  represented to CBB that he had paid all income taxes due from him for tax years 2017-

8  2020.  The 2019 Extension Request stated that he had made total income tax payments to

9  the United States in the amount of $325,000.  The 2020 Extension Request stated that he

10  had made total income tax payments to the United States in the amount of $300,000 and

11  that he was paying the United States an additional $200,000.

12         11.    In making its decision to provide the Barry Lane Loan to Teymourian,

13  CBB relied upon the foregoing representations made by Teymourian including that he had

14  filed income tax returns with the United States for the 2016-2019 tax years, that he had

15  filed a request for an extension of time to file his income tax return for the 2020 tax year,

16  and that he had paid the United States government all income taxes owed by him for each

17  of those tax years.

18         12.    CBB's reliance upon the foregoing representations was reasonable

19  because it had no reason to believe that they were not true.

20         13.    On or about May 25, 2023, and based upon a Proof of Claim for

21  Internal Revenue Taxes filed that date by the Department of the Treasury in the Chapter

22  11 bankruptcy case filed by Teymourian's spouse, Gail Suzzanne Marie Teymourian, in

23  the United States Bankruptcy Court for the Northern District of California (Case No. 23-

24  30259-HLB), CBB discovered that the true facts were that Teymourian failed to file income

25  tax returns with the United States for tax years 2017-2020 and that he owed the United

26  States government income taxes for the 2017-2020 tax years.  On October 30, 2023, the

27  Internal Revenue Service filed as Claim 3-1 in the Main Case a Proof of Claim for Internal

28  Revenue Taxes alleging that Teymourian failed to file federal income tax returns for the

GUTTENBERG, RAPSON & COLVIN LLP
1111 Broadway, Suite 1500
Oakland, California 94607
Telephone: (510) 286-2060

1   2017-2022 tax years inclusive and asserting claims against Teymourian estimated to be

2   $619,500 for unpaid income taxes.

3                           **The $400,000 Ferrando Diversified Loan**

4               14.     On or about December 29, 2022, CBB provided to Teymourian, at

5   Teymourian's request, a term loan (the "Ferrando Diversified Loan") in the original

6   principal amount of $400,000 to be amortized over 16 months and maturing in April

7   2024.

8               15.     Prior to CBB making the Ferrando Diversified Loan to Teymourian,

9   and as part of its loan underwriting and evaluation of Teymourian's ability to repay it, CBB

10  reviewed various pieces of financial and other information provided to CBB both in

11  writing and orally by Teymourian.  That information concerned, among other things,

12  proposed collateral for the Ferrando Diversified Loan, its related cash flow, and the

13  indebtedness owed to other creditors secured by the same proposed collateral.

14              16.     In particular, Teymourian offered to pledge and assign to CBB all of

15  his controlling membership interest in Ferrando Diversified Capital, LLC ("Ferrando

16  Diversified") which had acquired a second priority deed of trust lien against commercial

17  real estate commonly known as 110 Baytech Drive, San Jose, California (the "Baytech

18  Property").  Teymourian also offered to assign to CBB Ferrando Diversified's lien against

19  the Baytech Property.  In connection with those offers, Teymourian represented that the

20  Baytech Property generated sufficient lease income to service the debt owed by a

21  Teymourian-affiliated entity known as Alviso Park, LLC ("Alviso") to M360 2019-CRE2-LTD

22  ("M360"), the holder of the senior secured lien against the Baytech Property.  Teymourian

23  further represented to CBB that Alviso was making debt service payments to M360 as

24  agreed.  Teymourian also represented to CBB, including in a personal financial statement

25  dated as of December 16, 2022, that the loan balance owed by Alviso to M360 was

26  $15,300,000, and that the loan from M360 to Alviso matured in April 2024.

27              17.     CBB relied upon those representations in underwriting, approving and

28  making the Ferrando Diversified Loan.  Among other things, CBB structured that loan so

-4-

GUTTENBERG, RAPSON & COLVIN LLP
1111 Broadway, Suite 1500
Oakland, California 94607
Telephone: (510) 286-2060

1    that it obtained by Pledge and Control Agreement a security interest in Teymourian's

2    controlling membership interest in Ferrando Diversified; obtained and recorded an

3    assignment of Ferrando Diversified's deed of trust against the Baytech Property; and made

4    the maturity date of the Ferrando Diversified Note so that it would be fully repaid to CBB

5    concurrent with what it was led to believe was the maturity of the loan owed by Alviso to

6    M360, which Teymourian represented was in April 2024. At the time that CBB relied

7    upon those representations, it did so reasonably and had no reason to believe that they

8    were untrue.

9         18.    The true facts, discovered by CBB subsequent to the filing of

10   Teymourian's bankruptcy petition in this case were that, when Teymourian made those

11   representations to CBB while he was applying for the Ferrando Diversified Loan, the loan

12   owed by Alviso to M360 was in default; over $15,961,000 was owed by Alviso to M360;

13   and late fees of approximately $360,000 had accumulated on that loan. In addition, CBB

14   discovered that, on or about November 3, 2022 (less than two months prior to the making

15   of the Ferrando Diversified Loan), Alviso and M360 modified their loan agreement so that

16   the maturity date of M360's loan to Alviso was changed to April 1, 2023 (rather than in

17   April 2024) as had been previously represented by Teymourian to CBB, including in his

18   December 16, 2022 personal financial statement.

19        19.    On or about December 29, 2022, and in connection with the making

20   of the Ferrando Diversified Loan, Teymourian made, executed and delivered to CBB a

21   promissory note (the "Ferrando Diversified Note") of that date stating Teymourian's

22   obligations to repay the Ferrando Diversified Loan to CBB, including on a maturity date of

23   April 29, 2024. That credit structure was specifically designed by CBB so that the

24   Ferrando Diversified Loan would be fully amortized by a date that CBB was led to believe

25   was contemporaneous with the maturity of M360's loan to Alviso. A true and correct

26   copy of the Ferrando Diversified Note is attached hereto as Exhibit "3" and incorporated

27   by reference.

28

GUTTENBERG, RAPSON & COLVIN LLP
1111 Broadway, Suite 1500
Oakland, California 94607
Telephone: (510) 286-2060

20. Had CBB known the true facts that Teymourian had failed to file tax returns with, or paid his taxes owed to, the Internal Revenue Service, it would not have made either the Barry Lane Loan or the Ferrando Diversified Loan.

21. Also, had CBB known the true facts relating to the status of the loan owed by Alviso to M360, it would not have made the Ferrando Diversified Loan.

### The $150,000 Additional Advance

22. On or about February 27, 2023, CBB provided for the benefit of Teymourian, at Teymourian's request, an additional advance (the "Additional Advance") of $150,000 under the Ferrando Diversified Loan, thereby increasing the principal amount lent by CBB to Teymourian under that loan from $400,000 to $550,000. The expressed purpose of the Additional Advance was to enable the consummation of an alleged settlement of a dispute then pending between Teymourian, on the one hand, and Dakota Note, LLC and various affiliated individuals and entities (collectively, the "Dakota Parties"), on the other hand.

23. Prior to agreeing to the Additional Advance, Teymourian represented to CBB that he had reached an agreement with the Dakota Parties settling a long-running dispute between them and that the $150,000 was needed to pay the Dakota Parties' attorneys' fees. In approving the Additional Advance, CBB sought to wire those funds directly to the Dakota Parties. Teymourian rejected that, citing prior alleged failures by Teymourian and the Dakota Parties to consummate settlements between those parties.

24. On or about February 27, 2023, and in connection with the disbursement of the Additional Advance by CBB, it was ultimately agreed between CBB and Teymourian that the Additional Advance would be disbursed, in trust, to Kousha Berokim ("Berokim"), Teymourian's attorney; that, once disbursed, the Additional Advance would be only used to consummate the settlement of the dispute between Teymourian and the Dakota Parties; and that those funds would otherwise be returned to CBB.

-6-

GUTTENBERG, RAPSON & COLVIN LLP
1111 Broadway, Suite 1500
Oakland, California 94607
Telephone: (510) 286-2060

25.     Consequently, also on or about February 27, 2023, CBB and Teymourian entered into a written Change In Terms Agreement (the "Additional Advance CITA") which states, in pertinent part:

> " . . . [Teymourian] acknowledges the additional advance from [CBB] is funded directly to Kousha Berokim LLC for credit to Nariman Teymourian IOLTA.  [Teymourian] acknowledges that subject funds shall only be distributed to Dakota Note, LLC in furtherance of [Teymourian's] executed Settlement Agreement.  Any funds not directly issued to Dakota Note, LLC in furtherance of [Teymourian's] Settlement Agreement shall be immediately returned to [CBB]. . .

A true and correct copy of the Additional Advance CITA and related written Disbursement Request and Authorization, dated February 27, 2023, are attached hereto as collective Exhibit "4" and incorporated by reference.

26.     On February 27, 2023, the Additional Advance was disbursed, in trust, from CBB to Berokim pursuant to wire instructions provided by Teymourian to CBB; and the Additional Advance was received by Berokim that same date.

27.     Berokim has informed CBB that, notwithstanding the express provision of the Additional Advance CITA quoted above, the Additional Advance was disbursed a "day or so later" from Berokim to Teymourian, upon Teymourian's instructions to Berokim.

28.     On information and belief, the Additional Advance was not disbursed by Teymourian, or on his behalf, to Dakota Note, LLC or to any of the other Dakota Parties.

29.     On information and belief, the Additional Advance was misappropriated by Teymourian.

30.     Teymourian entered into the Additional Advance CITA with no intention of performing his obligations thereunder.

### Teymourian's Defaults and CBB's Damages

31.     On or about February 14, 2023, Teymourian defaulted in the performance of his obligations to CBB under the Barry Lane Loan by (among other

-7-

GUTTENBERG, RAPSON & COLVIN LLP
111 Broadway, Suite 1500
Oakland, California 94607
Telephone: (510) 286-2060

1  defaults) failing to repay the obligations due from him to CBB under the terms of the Barry

2  Lane Note.

3        32.    As of Teymourian's October 3, 2023 petition date (the "Petition

4  Date"), the principal sum of $7,000,000 remained due, owing, and unpaid from

5  Teymourian to CBB under the Barry Lane Note, together with accrued interest in the

6  amount of $458,500 and late charges of $24,035.75, plus additional costs of collection

7  and enforcement costs. Interest is continuing to accrue under the Barry Lane Note from

8  and after that date at the daily rate of $1,750.00.

9        33.    On or about March 29, 2023, Teymourian defaulted in the

10  performance of his obligations to CBB under the Ferrando Diversified Loan, including the

11  Additional Advance, by (among other defaults) failing to repay the obligations due from

12  him to CBB under the terms of the Ferrando Diversified Note, as modified by the

13  Additional Advance CITA.

14        34.    On or about February 28, 2023, Teymourian defaulted under the

15  terms of the Additional Advance CITA by misappropriating the Additional Advance.

16        35.    As of the Petition Date, the principal sum of $550,000 remained due,

17  owing, and unpaid from Teymourian to CBB under the Ferrando Diversified Note, as

18  modified by the Additional Advance CITA, together with accrued interest in the amount of

19  $35,975.00 and late charges of $10,390.39, plus additional costs of collection and

20  enforcement costs. Interest is continuing to accrue under the Ferrando Diversified Note,

21  as modified by the Additional Advance CITA, from and after that date at the daily rate of

22  $137.50.

23        36.    As of the Petition Date, the principal sum of $150,000 remained due,

24  owing, and unpaid from Teymourian to CBB under the Additional Advance CITA, together

25  with accrued interest and late charges in amounts according to proof. Interest is

26  continuing to accrue on that debt under the Ferrando Diversified Note, as modified by the

27  Additional Advance CITA, from and after that date at the annual rate of 9.0%.

28

-8-

GUTTENBERG, RAPSON & COLVIN LLP
111 Broadway, Suite 1500
Oakland, California 94607
Telephone: (510) 286-2060

37. As a consequence of Teymourian's defaults under the Barry Lane Loan, CBB has demanded payment in full from Teymourian under both the Barry Lane Note and the Ferrando Diversified Note, as modified by the Additional Advance CITA. Teymourian has failed to comply with those demands.

38. Teymourian's obligations to CBB under both the Barry Lane Note and the Ferrando Diversified Note, as modified by the Additional Advance CITA, constitute debts for money arising from financing made by CBB to Teymourian.

39. The terms of both the Barry Lane Note and the Ferrando Diversified Note, as modified by the Additional Advance CITA, provide that Teymourian is liable for all sums incurred by CBB in enforcing its rights thereunder, including CBB's attorneys' fees and other costs of collection. As a consequence of the defaults of Teymourian, CBB has engaged attorneys to enforce its rights under the Barry Lane Note and the Ferrando Diversified Note, as modified by the Additional Advance CITA, and has incurred, and will continue to incur, attorneys' fees and other enforcement costs. CBB prays leave to amend this Complaint when those fees and costs are finally ascertained.

## FIRST CLAIM FOR RELIEF

[For Determination of Dischargeability of Debt –
11 U.S.C. § 523(a)(2)(A)]

40. CBB realleges and incorporates herein by reference each and every foregoing paragraph.

41. The Barry Lane Loan was obtained by Teymourian by use of false representations and/or actual fraud perpetrated by Teymourian, other than statements reflecting Teymourian's financial condition.

WHEREFORE, CBB prays judgment as hereinafter set forth.

//

//

//

//

## SECOND CLAIM FOR RELIEF

[For Determination of Dischargeability of Debt –
11 U.S.C. § 523(a)(2)(B)]

42.    CBB realleges and incorporates herein by reference each and every foregoing paragraph.

43.    The Barry Lane Loan was obtained by Teymourian by Teymourian's delivery to CBB of one or more written statements that were materially false respecting Teymourian's financial condition on which CBB reasonably relied and which Teymourian delivered to CBB with the intention to deceive CBB.

WHEREFORE, CBB prays judgment as hereinafter set forth.

## THIRD CLAIM FOR RELIEF

[For Determination of Dischargeability of Debt –
11 U.S.C. § 523(a)(2)(A)]

44.    CBB realleges and incorporates herein by reference each and every foregoing paragraph.

45.    The Ferrando Diversified Loan was obtained by Teymourian by use of false representations and/or actual fraud perpetrated by Teymourian, other than statements reflecting Teymourian's financial condition.

WHEREFORE, CBB prays judgment as hereinafter set forth.

## FOURTH CLAIM FOR RELIEF

[For Determination of Dischargeability of Debt –
11 U.S.C. § 523(a)(2)(B)]

46.    CBB realleges and incorporates herein by reference each and every foregoing paragraph.

47.    The Ferrando Diversified Loan was obtained by Teymourian by Teymourian's delivery to CBB of one or more written statements that were materially false respecting Teymourian's financial condition on which CBB reasonably relied and which Teymourian delivered to CBB with the intention to deceive CBB.

-10-

GUTTENBERG, RAPSON & COLVIN LLP
1111 Broadway, Suite 1500
Oakland, California 94607
Telephone: (510) 286-2060

1    WHEREFORE, CBB prays judgment as hereinafter set forth.

2    ### FIFTH CLAIM FOR RELIEF

3    [For Determination of Dischargeability of Debt –
     11 U.S.C. § 523(a)(2)(A)]

4

5    48.    CBB realleges and incorporates herein by reference each and every

6    foregoing paragraph.

7    49.    The Additional Advance was obtained by Teymourian by use of false

8    representations and/or actual fraud perpetrated by Teymourian, other than statements

9    reflecting Teymourian's financial condition, including by making a promise with no

10   intention of performing it.

11   ### PRAYER FOR RELIEF

12   WHEREFORE, CBB prays for judgment against Teymourian as follows:

13   ### On its First Claim for Relief

14   1.    That the Court determine that Teymourian's debts to CBB under the

15   Barry Lane Note are non-dischargeable; and

16   2.    That it be awarded the principal sum of $7,000,000, plus interest,

17   late charges, and other additional sums accruing under the Barry Lane Note all in amounts

18   according to proof.

19   ### On its Second Claim for Relief

20   3.    That the Court determine that Teymourian's debts to CBB under the

21   Barry Lane Note are non-dischargeable; and

22   4.    That it be awarded the principal sum of $7,000,000, plus interest,

23   late charges, and other additional sums accruing under the Barry Lane Note all in amounts

24   according to proof.

25   ### On its Third Claim for Relief

26   5.    That the Court determine that Teymourian's debts to CBB under the

27   Ferrando Diversified Note, as modified by the Additional Advance CITA, are non-

28   dischargeable; and

-11-

GUTTENBERG, RAPSON & COLVIN LLP
1111 Broadway, Suite 1500
Oakland, California 94607
Telephone: (510) 286-2060

6.     That it be awarded the principal sum of $550,000, plus interest, late charges, and other additional sums accruing under the Ferrando Diversified Note, as modified by the Additional Advance CITA, all in amounts according to proof.

### On its Fourth Claim for Relief

7.     That the Court determine that Teymourian's debts to CBB under the Ferrando Diversified Note are non-dischargeable; and

8.     That it be awarded the principal sum of $550,000, plus interest, late charges, and other additional sums accruing under the Ferrando Diversified Note, as modified by the Additional Advance CITA, all in amounts according to proof.

### On Its Fifth Claim for Relief

9.     That the Court determine that Teymourian's debt to CBB under the Additional Advance is non-dischargeable; and

10.     That it be awarded the principal sum of $150,000, plus interest, late charges, and other additional sums accruing under the Ferrando Diversified Note, as modified by the Additional Advance CITA, all in amounts according to proof.

### On Each of its Claims for Relief

11.     That it be awarded its costs, including its attorneys' fees; and

12.     That it be awarded such further relief as the Court deems just and proper under the circumstances.

Dated:  April 18, 2024.

RAPSON LAW OFFICES

By _____
*/s/ David J. Rapson*

David J. Rapson
Attorneys for Plaintiff Community Bank of the Bay

-12-

# EXHIBIT "1"

# PROMISSORY NOTE

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $7,000,000.00 | 09-14-2021 | 09-14-2024 | 190014091 | 62 | | *** | [illegible] |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item. Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** NARIMAN S. TEYMOURIAN
66 BARRY LANE
ATHERTON , CA 94027

**Lender:** Community Bank of the Bay
Main Office
180 Grand Avenue, Suite 1550
Oakland, CA 94612
(510) 433-5400

**Principal Amount: $7,000,000.00** **Date of Note: September 14, 2021**

**PROMISE TO PAY. NARIMAN S. TEYMOURIAN ("Borrower") promises to pay to Community Bank of the Bay ("Lender"), or order, in lawful money of the United States of America, the principal amount of Seven Million & 00/100 Dollars ($7,000,000.00) or so much as may be outstanding, together with interest on the unpaid outstanding principal balance of each advance. Interest shall be calculated from the date of each advance until repayment of each advance.**

**PAYMENT. Borrower will pay this loan in one payment of all outstanding principal plus all accrued unpaid interest on September 14, 2024. In addition, Borrower will pay regular monthly payments of all accrued unpaid interest due as of each payment date, beginning October 14, 2021, with all subsequent interest payments to be due on the same day of each month after that. Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; then to any late charges; and then to any unpaid collection costs. Any accrued interest not paid when due is added to principal and thereafter will accrue interest as principal. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing. All payments must be made in U.S. dollars and must be received by Lender consistent with any written payment instructions provided by Lender. If a payment is made consistent with Lender's payment instructions but received after 5:00 PM Pacific Time, Lender will credit Borrower's payment on the next business day.**

**VARIABLE INTEREST RATE.** The interest rate on this Note is subject to change from time to time based on changes in an independent index which is the Prime Rate as published in the Wall Street Journal (the "Index"). The Index is not necessarily the lowest rate charged by Lender on its loans. Lender will tell Borrower the current Index rate upon Borrower's request. The interest rate change will not occur more often than each day. Borrower understands that Lender may make loans based on other rates as well. **The Index currently is 3.250% per annum.** Interest on the unpaid principal balance of this Note will be calculated as described in the "INTEREST CALCULATION METHOD" paragraph using a rate of 2.000 percentage points over the Index (the "Margin"), adjusted if necessary for any minimum and maximum rate limitations described below, resulting in an initial rate of 5.250%. If Lender determines, in its sole discretion, that the Index has become unavailable or unreliable, either temporarily, indefinitely, or permanently, during the term of this Note, Lender may amend this Note by designating a substantially similar substitute index. Lender may also amend and adjust the Margin to accompany the substitute index. The change to the Margin may be a positive or negative value, or zero. In making these amendments, Lender may take into consideration any then-prevailing market convention for selecting a substitute index and margin for the specific Index that is unavailable or unreliable. Such an amendment to the terms of this Note will become effective and bind Borrower 10 business days after Lender gives written notice to Borrower without any action or consent of the Borrower. NOTICE: Under no circumstances will the interest rate on this Note be less than 5.250% per annum or more than the maximum rate allowed by applicable law.

**INTEREST CALCULATION METHOD. Interest on this Note is computed on a 365/360 basis; that is, by applying the ratio of the interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. All interest payable under this Note is computed using this method.**

**PREPAYMENT; MINIMUM INTEREST CHARGE.** Borrower agrees that all loan fees and other prepaid finance charges are earned fully as of the date of the loan and will not be subject to refund upon early payment (whether voluntary or as a result of default), except as otherwise required by law. In any event, even upon full prepayment of this Note, Borrower understands that Lender is entitled to a **minimum interest charge of $100.00.** Other than Borrower's obligation to pay any minimum interest charge, Borrower may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments of accrued unpaid interest. Rather, early payments will reduce the principal balance due. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. **All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: Community Bank of the Bay, 180 Grand Avenue, Suite 1550 Oakland, CA 94612.**

**LATE CHARGE.** If a payment is 11 days or more late, Borrower will be charged **5.000% of the unpaid portion of the principal and interest overdue or $5.00, whichever is greater.**

**INTEREST AFTER DEFAULT.** Upon default, the interest rate on this Note shall, if permitted under applicable law, immediately increase by adding an additional 8.000 percentage point margin ("Default Rate Margin"). The Default Rate Margin shall also apply to each succeeding interest rate change that would have applied had there been no default.

**DEFAULT.** Each of the following shall constitute an event of default ("Event of Default") under this Note:

**Payment Default.** Borrower fails to make any payment when due under this Note.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**Default in Favor of Third Parties.** Borrower or any Grantor defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's property or Borrower's ability to repay this Note or perform Borrower's obligations under this Note or any of the related documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Death or Insolvency.** The death of Borrower or the dissolution or termination of Borrower's existence as a going business, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of this Note is impaired.

**Cure Provisions.** If any default, other than a default in payment, is curable and if Borrower has not been given a notice of a breach of the same provision of this Note within the preceding twelve (12) months, it may be cured if Borrower, after Lender sends written notice to Borrower demanding cure of such default: (1) cures the default within fifteen (15) days; or (2) if the cure requires more than fifteen (15) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance under this Note and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. Borrower also will pay any court costs, in addition to all other sums provided by law.

**GOVERNING LAW.** This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of California without regard to its conflicts of law provisions. This Note has been accepted by Lender in the State of California.

**CHOICE OF VENUE.** If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of Alameda County, State of California.

**DISHONORED ITEM FEE.** Borrower will pay a fee to Lender of $15.00 if Borrower makes a payment on Borrower's loan and the check or preauthorized charge with which Borrower pays is later dishonored.

**COLLATERAL.** Borrower acknowledges this Note is secured by the following collateral described in the security instruments listed herein:

(A) a Deed of Trust dated September 14, 2021, to a trustee in favor of Lender on real property located in SAN MATEO County, State of California. That agreement contains the following due on sale provision: Lender may, at Lender's option, declare immediately due and payable all sums secured by the Deed of Trust upon the sale or transfer, without Lender's prior written consent, of all or any part of the Real Property, or any interest in the Real Property. A "sale or transfer" means the conveyance of Real Property or any right, title or interest in the Real Property; whether legal, beneficial or equitable; whether voluntary or involuntary; whether by outright sale, deed, installment sale contract, land contract, contract for deed, leasehold interest with a term greater than three (3) years, lease-option contract, or by sale, assignment, or transfer of any beneficial interest in or to any land trust holding title to the Real Property, or by any other method of conveyance of an interest in the Real Property. However, this option shall not be exercised by Lender if such exercise is prohibited by applicable law.

(B) an Assignment of All Rents to Lender on real property located in SAN MATEO County, State of California.

**LINE OF CREDIT.** This Note evidences a revolving line of credit. Advances under this Note may be requested orally by Borrower or as provided in this paragraph. All oral requests shall be confirmed in writing on the day of the request. All communications, instructions, or directions by telephone or otherwise to Lender are to be directed to Lender's office shown above. Borrower agrees to be liable for all sums either: (A) advanced in accordance with the instructions of an authorized person or (B) credited to any of Borrower's accounts with Lender. The unpaid principal balance owing on this Note at any time may be evidenced by endorsements on this Note or by Lender's internal records, including daily computer print-outs.

**PRIMARY DEPOSIT RELATIONSHIP.** Borrower understands and agrees that Borrower will maintain its primary operating deposit account with Lender. Should Borrower fail to maintain its primary deposit account relationship with Lender, Lender may increase Borrower's Interest Rate Margin by an additional 20 percentage points, thereby increasing the daily simple interest rate on the Borrower's loan until such time as Borrower's primary banking relationship is maintained at Community Bank of the Bay.

**LENDER'S EXPENDITURES.** Borrower agrees to pay all of Lender's costs and expenses, including Lender's attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Note. Lender may hire or pay someone else to help enforce this agreement or to collect the Loan, and Borrower shall pay the costs and expenses of such enforcement. Costs and expenses include Lender's attorneys' fees and legal expenses whether or not there is a lawsuit, including attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Borrower shall also pay all court costs, in addition to all other sums provided by law. All expenses incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Borrower. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity.

**BUSINESS LOAN AGREEMENT.** This loan is subject to the terms and conditions of the Business Loan Agreement dated September 14, 2021.

**CORRECTION OF ERRORS.** In the event the holder of the Note at any time discovers that the Note contains an error that was caused by a clerical mistake, calculation error, computer malfunction, printing error or similar error, Borrower agrees, upon notice from the holder of this Note to re-execute any documents that are necessary to correct any such error(s). Borrower further agrees that the holder of the Note will not be liable to the Borrower for any damages incurred by Borrower that are directly or indirectly caused by any such error(s).

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**NOTIFY US OF INACCURATE INFORMATION WE REPORT TO CONSUMER REPORTING AGENCIES.** Borrower may notify Lender if Lender reports any inaccurate information about Borrower's account(s) to a consumer reporting agency. Borrower's written notice describing the

Case: 24-03015    Doc# 2    Filed: 04/19/24    Entered: 04/19/24 07:34:00    Page 15 of 26

specific inaccuracy(ies) should be sent to Lender at the following address: Community Bank of the Bay 180 Grand Avenue, Suite 1550 Oakland, CA 94612.

**GENERAL PROVISIONS.** If any part of this Note cannot be enforced, this fact will not affect the rest of the Note. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive any applicable statute of limitations, presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several.

**PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS. BORROWER AGREES TO THE TERMS OF THE NOTE.**

**BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.**

BORROWER:

X_____
  NARIMAN S. TEYMOURIAN

LaserPro, Ver. 21.3.0.041  Copr. Finastra USA Corporation 1997, 2021.  All Rights Reserved.  - CA  C:\CFI\LPL\D30.FC  TR-2223  PR-31

# EXHIBIT "2"

# CHANGE IN TERMS AGREEMENT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $7,000,000.00 | 12-29-2022 | 09-14-2023 | 190014091 | 62 | | *** | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** NARIMAN S. TEYMOURIAN
66 BARRY LANE
ATHERTON , CA  94027

**Lender:** Community Bank of the Bay
Main Office
180 Grand Avenue, Suite 1550
Oakland, CA  94612
(510) 433-5400

---

**Principal Amount: $7,000,000.00**          **Date of Agreement:  December 29, 2022**

**DESCRIPTION OF EXISTING INDEBTEDNESS.**

Revolving Line of Credit evidenced by a Promissory Note dated September 14, 2021 in the original amount of $7,000,000.00, herein modified.

**DESCRIPTION OF COLLATERAL.** Borrower acknowledges this Note is secured by the following collateral described in the Security Instruments listed herein:

a.) Real Property secured by a Deed of Trust dated September 14, 2021 and recorded September 22, 2021 as Instrument Number 2021-135494 in Official Records of San Mateo County, State of California, from a trustee in favor of Lender.

b.) Assignment of All Rents to Lender on real property in San Mateo County, State of California, as evidenced by an Assignment of Rents to Lender dated September 14, 2021, recorded September 22, 2021 as Instrument Number 2021-135495.

**DESCRIPTION OF CHANGE IN TERMS.**

**MATURITY DATE.** The maturity date is hereby amended from September 14, 2024 to September 14, 2023, at which time any remaining principal plus accrued unpaid interest will be due and payable.

**FIXED INTEREST RATE.** Effective the date of this agreement, the interest rate is hereby amended from a variable rate to a fixed interest rate of 9.000%. The paragraph entitled 'VARIABLE INTEREST RATE' is hereby deleted in its entirety.

**PAYMENT.** Borrower will pay this loan in one payment of all outstanding principal plus all accrued unpaid interest on September 14, 2023. In addition, Borrower will pay regular monthly payments of all accrued unpaid interest due as of each payment date, beginning January 14, 2023, with all subsequent interest payments to be due on the same day of each month after that.

**INTEREST CALCULATION METHOD.** Interest on this loan is computed on a 365/360 basis; that is, by applying the ratio of the interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. All interest payable under this loan is computed using this method.

**CONTINUING VALIDITY.** Except as expressly changed by this Agreement, the terms of the original obligation or obligations, including all agreements evidenced or securing the obligation(s), remain unchanged and in full force and effect. Consent by Lender to this Agreement does not waive Lender's right to strict performance of the obligation(s) as changed, nor obligate Lender to make any future change in terms. Nothing in this Agreement will constitute a satisfaction of the obligation(s). It is the intention of Lender to retain as liable parties all makers and endorsers of the original obligation(s), including accommodation parties, unless a party is expressly released by Lender in writing. Any maker or endorser, including accommodation makers, will not be released by virtue of this Agreement. If any person who signed the original obligation does not sign this Agreement below, then all persons signing below acknowledge that this Agreement is given conditionally, based on the representation to Lender that the non-signing party consents to the changes and provisions of this Agreement or otherwise will not be released by it. This waiver applies not only to any initial extension, modification or release, but also to all such subsequent actions.

**BUSINESS LOAN AGREEMENT.** This loan is subject to the terms and conditions of the Business Loan Agreement dated December 29, 2022.

**CORRECTION OF ERRORS.** In the event the holder of the Note at any time discovers that the Note contains an error that was caused by a clerical mistake, calculation error, computer malfunction, printing error or similar error, Borrower agrees, upon notice from the holder of this Note to re-execute any documents that are necessary to correct any such error(s). Borrower further agrees that the holder of the Note will not be liable to the Borrower for any damages incurred by Borrower that are directly or indirectly caused by any such error(s).

**PRIOR TO SIGNING THIS AGREEMENT, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS AGREEMENT. BORROWER AGREES TO THE TERMS OF THE AGREEMENT.**

**BORROWER:**

x *Nariman Teymourian*
   NARIMAN S. TEYMOURIAN

LaserPro, Ver. 22.4.0.046  Copr. Finastra USA Corporation 1997, 2022.  All Rights Reserved.  - CA  C:\CFI\LPL\D20C.FC  TR-2051  PR-31

# EXHIBIT "3"

# PROMISSORY NOTE

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $400,000.00 | 12-29-2022 | 04-29-2024 | 190015899 | | | *** | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** NARIMAN TEYMOURIAN
66 BARRY LANE
ATHERTON , CA 94027

**Lender:** Community Bank of the Bay
180 Grand Avenue Suite 1550
Oakland, CA 94612
(510) 433-5400

**Principal Amount: $400,000.00** **Date of Note: December 29, 2022**

**PROMISE TO PAY. NARIMAN TEYMOURIAN ("Borrower") promises to pay to Community Bank of the Bay ("Lender"), or order, in lawful money of the United States of America, the principal amount of Four Hundred Thousand & 00/100 Dollars ($400,000.00), together with interest on the unpaid principal balance from December 29, 2022, calculated as described in the "INTEREST CALCULATION METHOD" paragraph using an interest rate of 9.000%, until paid in full. The interest rate may change under the terms and conditions of the "INTEREST AFTER DEFAULT" section.**

**PAYMENT. Borrower will pay this loan in 15 payments of $26,645.72 each payment and an irregular last payment estimated at $26,645.74. Borrower's first payment is due January 29, 2023, and all subsequent payments are due on the same day of each month after that. Borrower's final payment will be due on April 29, 2024, and will be for all principal and all accrued interest not yet paid. Payments include principal and interest. Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; then to any late charges; and then to any unpaid collection costs. Any accrued interest not paid when due is added to principal and thereafter will accrue interest as principal. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing. All payments must be made in U.S. dollars and must be received by Lender consistent with any written payment instructions provided by Lender. If a payment is made consistent with Lender's payment instructions but received after 5:00 PM Pacific Time, Lender will credit Borrower's payment on the next business day.**

**INTEREST CALCULATION METHOD. Interest on this Note is computed on a 365/360 basis; that is, by applying the ratio of the interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. All interest payable under this Note is computed using this method.**

**PREPAYMENT; MINIMUM INTEREST CHARGE.** Borrower agrees that all loan fees and other prepaid finance charges are earned fully as of the date of the loan and will not be subject to refund upon early payment (whether voluntary or as a result of default), except as otherwise required by law. In any event, even upon full prepayment of this Note, Borrower understands that Lender is entitled to a **minimum interest charge of $100.00.** Other than Borrower's obligation to pay any minimum interest charge, Borrower may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments under the payment schedule. Rather, early payments will reduce the principal balance due and may result in Borrower's making fewer payments. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. **All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: Community Bank of the Bay, 180 Grand Avenue, Suite 1550 Oakland, CA 94612.**

**LATE CHARGE.** If a payment is 11 days or more late, Borrower will be charged **5.000% of the unpaid portion of the regularly scheduled payment or $5.00, whichever is greater.**

**INTEREST AFTER DEFAULT.** Upon default, the interest rate on this Note shall, if permitted under applicable law, immediately increase by 8.000 percentage points.

**DEFAULT.** Each of the following shall constitute an event of default ("Event of Default") under this Note:

**Payment Default.** Borrower fails to make any payment when due under this Note.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**Default in Favor of Third Parties.** Borrower or any Grantor defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's property or Borrower's ability to repay this Note or perform Borrower's obligations under this Note or any of the related documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Death or Insolvency.** The death of Borrower or the dissolution or termination of Borrower's existence as a going business, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of this Note is impaired.

DocuSign Envelope ID: 61087CBC-2AEE-4BCA-9EBB-07091819298C

**Insecurity.** Lender in good faith believes itself insecure.

**Cure Provisions.** If any default, other than a default in payment, is curable and if Borrower has not been given a notice of a breach of the same provision of this Note within the preceding twelve (12) months, it may be cured if Borrower, after Lender sends written notice to Borrower demanding cure of such default: (1) cures the default within fifteen (15) days; or (2) if the cure requires more than fifteen (15) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance under this Note and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. Borrower also will pay any court costs, in addition to all other sums provided by law.

**GOVERNING LAW. This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of California without regard to its conflicts of law provisions. This Note has been accepted by Lender in the State of California.**

**CHOICE OF VENUE.** If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of Alameda County, State of California.

**DISHONORED ITEM FEE.** Borrower will pay a fee to Lender of $15.00 if Borrower makes a payment on Borrower's loan and the check or preauthorized charge with which Borrower pays is later dishonored.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the indebtedness against any and all such accounts.

**COLLATERAL.** Borrower acknowledges this Note is secured by one or more security agreements, including without limitation by that certain Pledge and Control Agreement for membership interest of Ferrando Diversified Capital LLC dated approximately even date herewith between Borrower and Lender.

**LENDER'S EXPENDITURES.** Borrower agrees to pay all of Lender's costs and expenses, including Lender's attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Note. Lender may hire or pay someone else to help enforce this agreement or to collect the Loan, and Borrower shall pay the costs and expenses of such enforcement. Costs and expenses include Lender's attorneys' fees and legal expenses whether or not there is a lawsuit, including attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Borrower shall also pay all court costs, in addition to all other sums provided by law. All expenses incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Borrower. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity.

**PRIMARY DEPOSIT RELATIONSHIP.** Borrower understands and agrees that Borrower will maintain its primary operating deposit account with Lender. Should Borrower fail to maintain its primary deposit account relationship with Lender, Lender may increase Borrower's Interest Rate Margin by an additional 2.00 percentage points, thereby increasing the daily simple interest rate on the Borrower's loan until such time as Borrower's primary banking relationship is maintained at Community Bank of the Bay.

**BUSINESS LOAN AGREEMENT.** This loan is subject to the terms and conditions of the Business Loan Agreement dated December 29, 2022.

**CORRECTION OF ERRORS.** In the event the holder of the Note at any time discovers that the Note contains an error that was caused by a clerical mistake, calculation error, computer malfunction, printing error or similar error, Borrower agrees, upon notice from the holder of this Note to re-execute any documents that are necessary to correct any such error(s). Borrower further agrees that the holder of the Note will not be liable to the Borrower for any damages incurred by Borrower that are directly or indirectly caused by any such error(s).

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**NOTIFY US OF INACCURATE INFORMATION WE REPORT TO CONSUMER REPORTING AGENCIES.** Borrower may notify Lender if Lender reports any inaccurate information about Borrower's account(s) to a consumer reporting agency. Borrower's written notice describing the specific inaccuracy(ies) should be sent to Lender at the following address: Community Bank of the Bay 180 Grand Avenue, Suite 1550 Oakland, CA 94612.

**GENERAL PROVISIONS.** If any part of this Note cannot be enforced, this fact will not affect the rest of the Note. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive any applicable statute of limitations, presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several.

DocuSign Envelope ID: 61087CBC-2AEE-4BCA-9EBB-07091819298C

PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE. BORROWER AGREES TO THE TERMS OF THE NOTE.

BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.

BORROWER:

DocuSigned by:

X *Nariman Teymourian*
NARIMAN TEYMOURIAN

LaserPro, Ver. 22.4.0.056  Copr. Finastra USA Corporation 1997, 2022.  All Rights Reserved.  - CA  C:\CFI\LPL\D20.FC  TR-2646  PR-3

# EXHIBIT "4"

DocuSign Envelope ID: 67892CB5-1545-4F2B-AF0E-E2AE25B5478C

# CHANGE IN TERMS AGREEMENT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $550,000.00 | 02-27-2023 | 04-29-2024 | 190015899 | | | *** | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item. Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** NARIMAN TEYMOURIAN
66 BARRY LANE
ATHERTON , CA 94027

**Lender:** Community Bank of the Bay
180 Grand Avenue Suite 1550
Oakland, CA 94612
(510) 433-5400

**Principal Amount: $550,000.00** **Date of Agreement: February 27, 2023**

**DESCRIPTION OF EXISTING INDEBTEDNESS.** A loan evidenced by a Promissory Note in the original amount of $400,000.00 dated December 29, 2022 (the "Note"), as amended herein.

**DESCRIPTION OF COLLATERAL.**

a.) That certain Pledge and Control Agreement for membership interest of Ferrando Diversified Capital LLC, dated December 29, 2022, between Borrower and Lender together with all renewals of, extensions of, modifications of, consolidations of, and substitutions for the agreement.

b.) An Assignment of Deed of Trust dated February 8, 2023 and recorded February 16, 2023 as Instrument Number 25438600 in Official Records of Santa Clara County, State of California, from a trustee in favor of Lender.

**DESCRIPTION OF CHANGE IN TERMS.** Borrower acknowledges the Note is hereby modified as follows:

**ADDITIONAL ADVANCE.** The principal amount of the Note is hereby increased from $400,000.00 to $550,000.00. Borrower acknowledges the additional advance from Lender is funded directly to Kousha Berokirr LLC for credit to Nariman Teymourian IOLTA. Borrower acknowledges that subject funds shall only be distributed to Dakota Note, LLC in furtherance of Borrower's executed Settlement Agreement. Any funds not directly issued to Dakota Note, LLC in furtherance of Borrower's Settlement Agreement, shall be immediately returned to Bank. Borrower promises to pay to Lender, or order, the principal amount of $550,000.00, or so much as may be outstanding, together with interest on the unpaid outstanding principal balance made under this Agreement.

**PAYMENT CHANGE.** The payment amount is amended as more fully described in the "PAYMENT" paragraph below.

**PAYMENT.** Borrower will pay this loan in accordance with the following payment schedule, which calculates interest on the unpaid principal balances as described in the "INTEREST CALCULATION METHOD" paragraph using the interest rates described in this paragraph: 2 monthly consecutive principal and interest payments of $26,645.72 each, beginning January 29, 2023, with interest calculated on the unpaid principal balances using an interest rate of 9.000%; 13 monthly consecutive interest payments, beginning March 29, 2023, with interest calculated on the unpaid principal balances using an interest rate of 9.000%; 13 monthly consecutive principal payments of $25,000.00 each, beginning March 29, 2023, during which interest continues to accrue on the unpaid principal balances using an interest rate of 9.000%; and one principal and interest payment of $176,994.88 on April 29, 2024, with interest calculated on the unpaid principal balances using an interest rate of 9.000%. This estimated final payment is based on the assumption that all payments will be made exactly as scheduled; the actual final payment will be for all principal and accrued interest not yet paid, together with any other unpaid amounts on this loan. Notwithstanding the foregoing, the rate of interest accrual described for the principal only payment stream applies only to the extent that no other interest rate for any other payment stream applies.

**INTEREST CALCULATION METHOD.** Interest on this loan is computed on a 365/360 basis; that is, by applying the ratio of the interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. All interest payable under this loan is computed using this method.

**CONTINUING VALIDITY.** Except as expressly changed by this Agreement, the terms of the original obligation or obligations, including all agreements evidenced or securing the obligation(s), remain unchanged and in full force and effect. Consent by Lender to this Agreement does not waive Lender's right to strict performance of the obligation(s) as changed, nor obligate Lender to make any future change in terms. Nothing in this Agreement will constitute a satisfaction of the obligation(s). It is the intention of Lender to retain as liable parties all makers and endorsers of the original obligation(s), including accommodation parties, unless a party is expressly released by Lender in writing. Any maker or endorser, including accommodation makers, will not be released by virtue of this Agreement. If any person who signed the original obligation does not sign this Agreement below, then all persons signing below acknowledge that this Agreement is given conditionally, based on the representation to Lender that the non-signing party consents to the changes and provisions of this Agreement or otherwise will not be released by it. This waiver applies not only to any initial extension, modification or release, but also to all such subsequent actions.

**BUSINESS LOAN AGREEMENT.** This loan is subject to the terms and conditions of the Business Loan Agreement dated December 29, 2022.

**CORRECTION OF ERRORS.** In the event the holder of the Note at any time discovers that the Note contains an error that was caused by a clerical mistake, calculation error, computer malfunction, printing error or similar error, Borrower agrees, upon notice from the holder of this Note to re-execute any documents that are necessary to correct any such error(s). Borrower further agrees that the holder of the Note will not be liable to the Borrower for any damages incurred by Borrower that are directly or indirectly caused by any such error(s).

**PRIOR TO SIGNING THIS AGREEMENT, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS AGREEMENT. BORROWER AGREES TO THE TERMS OF THE AGREEMENT.**

**BORROWER:**

DocuSigned by:
x Nariman Teymourian
NARIMAN TEYMOURIAN

DocuSign Envelope ID: 67892CB5-1545-4F2B-AF0E-E2AE25B5478C

**LENDER:**

**COMMUNITY BANK OF THE BAY**

X ___William S. keller_____

William S. Keller, Chief Executive Officer

LaserPro, Ver 22.4.0.056  Copr. Finastra USA Corporation 1997, 2023   All Rights Reserved   - CA  C:\CFI\LPL\D20C.FC  TR-2701  PR-3

# DISBURSEMENT REQUEST AND AUTHORIZATION

| Principal $550,000.00 | Loan Date 02-27-2023 | Maturity 04-29-2024 | Loan No 190015899 | Call / Coll | Account | Officer *** | Initials |
|---|---|---|---|---|---|---|---|

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** NARIMAN TEYMOURIAN
66 BARRY LANE
ATHERTON , CA 94027

**Lender:** Community Bank of the Bay
180 Grand Avenue Suite 1550
Oakland, CA 94612
(510) 433-5400

**LOAN TYPE.** This is a Fixed Rate (9.000% initial rate) Nondisclosable Loan to an Individual for $550,000.00 due on April 29, 2024.

**PRIMARY PURPOSE OF LOAN.** The primary purpose of this loan is for:

☐ Personal, Family, or Household Purposes or Personal Investment.

☒ Business (Including Real Estate Investment).

**SPECIFIC PURPOSE.** The specific purpose of this loan is: Additional advance to existing loan used for financing of pre-settlement expenses.

**DISBURSEMENT INSTRUCTIONS.** Borrower understands that no loan proceeds will be disbursed until all of Lender's conditions for making the loan have been satisfied. Please disburse the loan proceeds of $550,000.00 as follows:

|  |  |
|---|---|
| Other Disbursements: | $550,000.00 |
| $150,000.00 Wire to Attorney Trust Account @ Kousha Berokim LLC for benefit of Nariman Teymourian IOLTA | |
| $400,000.00 Outstanding Principal Balance Previously Disbursed | |
| **Note Principal:** | $550,000.00 |

**AUTOMATIC PAYMENTS.** Borrower hereby authorizes Lender automatically to deduct from Borrower's Demand Deposit - Checking account, numbered 115013641, the amount of any loan payment. If the funds in the account are insufficient to cover any payment, Lender shall not be obligated to advance funds to cover the payment. At any time and for any reason, Borrower or Lender may voluntarily terminate Automatic Payments.

**FINANCIAL CONDITION.** BY SIGNING THIS AUTHORIZATION, BORROWER REPRESENTS AND WARRANTS TO LENDER THAT THE INFORMATION PROVIDED ABOVE IS TRUE AND CORRECT AND THAT THERE HAS BEEN NO MATERIAL ADVERSE CHANGE IN BORROWER'S FINANCIAL CONDITION AS DISCLOSED IN BORROWER'S MOST RECENT FINANCIAL STATEMENT TO LENDER. THIS AUTHORIZATION IS DATED FEBRUARY 27, 2023.

**BORROWER:**

DocuSigned by:

x _Nariman Teymourian_____
NARIMAN TEYMOURIAN